UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| CAROL ARMENTA, | ) | No. CV 11-10652-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 4, 2012, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 12, 2012, and January 18, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 27, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 8, 1963. [Administrative Record ("AR") at 87-88.] She has a tenth grade education [AR at 234], but no past relevant work experience. [AR at 53, 70, 82.][1]

On July 31, 2008, plaintiff filed an application for Supplemental Security Income, alleging that she has been unable to work since January 1, 1997, due to depression, pain in her arm and hand, and carpal tunnel syndrome. [AR at 87-88, 215-16, 229-35, 289-95.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 92-96, 99-103, 107.] A hearing was held on May 4, 2010, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 65-86.] A vocational expert also testified. [AR at 81-84.] On August 30, 2010, a supplemental hearing (at which plaintiff again appeared with counsel) was started, but was continued after a medical expert reported that he was unable to read the treatment notes of plaintiff's treating psychiatrist. [AR at 14, 61-64.] On January 19, 2011, the hearing which had been continued on August 30, 2010, resumed, at which time plaintiff again appeared with counsel and testified on her own behalf. [AR at 30-60.] In addition, the medical expert who appeared at the August 30, 2010, proceeding, and a second vocational expert, testified. [AR at 45-60.] On February 12, 2011, the ALJ determined that plaintiff was not disabled. [AR at 14-24.] On December 2, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 6.] This action followed.

/

/

/

/

---

[1] Plaintiff indicated in a disability report that she has past work experience as a "packer" [AR at 231], but testified at her first hearing before an Administrative Law Judge that she had not worked for any kind of pay in the fifteen years prior to her application for Supplemental Security Income payments, which was confirmed by the vocational expert who testified at that hearing. [AR at 70, 82.] The Commissioner's regulations define "past relevant work," in part, as work which was "done within the last 15 years." 20 C.F.R. § 416.965(a).

2

# III.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering both adverse and supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.

# **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether

the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the application date, July 31, 2008. [AR at 17.] At step two, the ALJ concluded that plaintiff has the following severe combination of medically determinable impairments: hypertension; obesity; a depressive disorder, recurrent, without psychotic features; and an anxiety disorder, not otherwise specified. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or medically equal any of the impairments in the Listing. [Id.]
/

The ALJ further determined that plaintiff retained the residual functional capacity ("RFC")[2] to perform "medium work" as defined in 20 C.F.R. § 416.967(c),[3] except that she "is limited to simple repetitive tasks, with limited interpersonal contact and she is unable [to] perform work requiring significant teamwork." [AR at 19.] At step four, the ALJ concluded that plaintiff does not have past relevant work experience. [AR at 22.] At step five, the ALJ found, based on the Medical-Vocational Guidelines and the VE's testimony, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] ... can perform." [AR at 23.] Accordingly, the ALJ determined that plaintiff has not been under a disability since July 31, 2008, the date her application was filed. [AR at 24.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ improperly rejected her treating physician's opinion; (2) there is an inconsistency between the ALJ's determination that plaintiff can perform certain jobs and the descriptions of those jobs found in the Dictionary of Occupational Titles; (3) the ALJ improperly found that plaintiff's daily activities support a conclusion that she can perform substantial gainful activity; (4) the ALJ failed to fully develop the record; and (5) the ALJ improperly rejected plaintiff's credibility. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

/
/
/
/
/

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] 20 C.F.R. § 416.967(c) defines "medium work" as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

**ALJ FAILED TO RECONTACT THE TREATING PHYSICIAN AND FULLY DEVELOP THE RECORD**

Plaintiff contends that the ALJ failed to fully develop the record because the ALJ did not attempt to contact plaintiff's treating psychiatrist, whose opinion the ALJ rejected because he found the psychiatrist's treatment notes illegible. [JS at 22-27.]

While plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  This duty extends to the represented as well as to the unrepresented claimant. Smolen, 80 F.3d at 1288; see Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).  "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

The ALJ's responsibility derives in part from the basic premise that disability hearings are not adversarial in nature. See Sims v. Apfel, 530 U.S. 103, 110-11, 120 S.Ct. 2080 (2000).  It is also based on the regulatory directive that, in an administrative hearing, the ALJ "looks fully into the issues." 20 C.F.R. § 416.1444; see Pearson v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989) (recognizing ALJ's "duty of 'full inquiry' under § 416.1444").

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  The ALJ's duty to recontact a treating physician arises when the evidence received from that physician is inadequate to determine disability, contains a conflict or ambiguity, or is not based on medically acceptable techniques. 20 C.F.R. § 416.912(e) (2011).  The responsibility to see that this duty is fulfilled

belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

Psychiatrist Dr. Dayalal D. Tank saw plaintiff monthly between October 1997 and November 2010.[4] [AR at 74, 316, 360-89, 427-44, 446, 453, 500-02.] His monthly treatment notes in the record dating from January 2007 to November 2010 are largely illegible. [See AR at 360-89, 427-44, 500-02.] Nevertheless, Dr. Tank completed a Short-Form Evaluation for Mental Disorders for plaintiff on September 24, 2008, in which he diagnosed plaintiff with major depressive disorder and anxiety disorder, not otherwise specified. [AR at 316-18.] He performed a mental status examination of plaintiff and found that her motor activity was hyperactive, her speech was rapid, and her behavior was irritable and apathetic. [AR at 316.] He also found that her concentration and immediate memory were severely impaired, that her mood was anxious, depressed, and fearful, and that her thought processes reflected preoccupation with phobias. [AR at 316-17.] Dr. Tank opined that plaintiff cannot usefully perform or sustain the following activities: understand, remember, and carry out simple and complex instructions; maintain concentration, attention, and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and respond appropriately to changes in a work setting. [AR at 318.] On July 29, 2010, Dr. Tank completed a Mental RFC Questionnaire concerning plaintiff, and rendered the same diagnoses as those he rendered in the September 24, 2008, Short-Form Evaluation. [AR at 446-51.] He also opined that plaintiff's highest Global Assessment of Functioning ("GAF") score[5] over the previous year was 50 [AR at 446], which indicates "[s]erious symptoms (e.g., suicidal ideation, severe

---

[4] The records contain monthly treatment notes from Dr. Tank dating from January 2007 to November 2010. [See AR at 360-89, 427-44, 500-02.] However, other records submitted by Dr. Tank consistently represent that he treated plaintiff for psychiatric reasons from October 28, 1997. [See AR at 316, 446, 453.] Plaintiff also testified at the May 4, 2010, hearing before the ALJ that she had seen Dr. Tank since 1997. [AR at 74.]

[5] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).

obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. Dr. Tank stated that plaintiff's mental impairments have lasted, or are expected to last, over 12 months [AR at 446], and indicated signs and symptoms belonging to plaintiff that are consistent with his September 24, 2008, evaluation findings. [See AR at 447-48.] He also indicated in the questionnaire that plaintiff has serious limitations in the same areas for which he found in the September 24, 2008, evaluation, that plaintiff cannot usefully perform or sustain activity, and opined that plaintiff would, on average, be absent from work for more than four days per month as a result of her impairments and necessary treatment. [See AR at 449-50.] Finally, on September 4, 2010, Dr. Tank wrote a letter stating that he had diagnosed plaintiff with major depressive disorder without psychotic features and anxiety disorder, not otherwise specified. [AR at 453.] Dr. Tank further stated that plaintiff "remains sad [and] depressed, feels anxious [and] nervous, has panic attack[s], ... is not able to concentrate, [and] is not able to focus on things." [Id.] He opined that plaintiff "[is] not able to work [and] is not able to function." [Id.]

At plaintiff's May 4, 2010, hearing before the ALJ, the ALJ granted plaintiff's request for a psychological consultative examination "in view of the fact that [Dr. Tank's] treatment records are very difficult to read." [AR at 85.] Plaintiff's then-attorney[6] also represented that he would "see what else [he could] get" in terms of more legible records from Dr. Tank. [See id.] On July 28, 2010, additional treatment notes from Dr. Tank were submitted to the ALJ. [See AR at 426-44.] At the supplemental hearing on August 30, 2010, the ALJ stated that as of that date, he had received "supplemental records from the treating psychiatrist" which were also "completely illegible." [AR at 63.] The ALJ asked counsel whether counsel wanted "an opportunity ... to get [Dr. Tank] to perhaps type something out or provide some readable form of the records," to which counsel answered in the affirmative. [AR at 63-64.] The ALJ stated, "[S]o ... your firm will take responsibility for attempting to get this in some readable format." Counsel replied: "Yes. That's

---

[6] Plaintiff was represented by counsel from a different firm at the time of her hearings before the ALJ. [See JS at 25.]

8

correct." [AR at 64.] Thereafter, on September 9, 2010, Dr. Tank's July 29, 2010, Mental RFC Questionnaire and his September 4, 2010, letter were submitted to the ALJ. [See AR at 445-53.] On January 19, 2011, when plaintiff's supplemental hearing before the ALJ resumed, the ALJ noted that he had continued the August 30, 2010, hearing "in order to give [plaintiff's counsel's] firm an opportunity to obtain typed or otherwise legible versions of [Dr. Tank's] records," but stated, "I don't see that any progress has been made on that so apparently that was not ... possible." [AR at 32-33.] Counsel responded, "Well, there was, there is a, at ... 16F, there's a mental RFC, which I don't know, no that's 7/[20]10." [AR at 33.] The ALJ stated:

> [W]e have ... two reports from [Dr. Tank] at 16[F] and 17[F].[7] I think the problem ... from my perspective is to see whether the underlying notes are supportive of the opinion evidence, and so that was the reason for that request, but apparently that hasn't been -- I'll assume since it's not in there that it wasn't possible to obtain that, so certainly more ... than adequate time has been allowed, so we'll proceed to complete the record today ... .

[Id. (footnote added).]

In his decision, the ALJ stated:

> At the January 2011 hearing, counsel advised me that, despite diligent efforts, he was unable to obtain a legible transcription of the treatment records. In light thereof, I find that reasonable efforts to fully develop the record, including appropriate re-contacting of Dr. Tank to obtain legible transcriptions of his treatment records, has been undertaken pursuant to 20 C.F.R. [§] 416.912. I therefore[] proceed to decide this matter on the record as it currently stands.

[AR at 14.] Later in the decision, the ALJ noted that Dr. Tank "has offered legible functional assessments, all of which assert that [plaintiff's] psychiatric symptoms are profound and essentially listing level in severity," citing Dr. Tank's September 24, 2008, Short-Form Evaluation, his July 29, 2010, Mental RFC Questionnaire, and his September 4, 2010, letter. [AR at 20.] The ALJ stated that "because [Dr. Tank's] treatment records are illegible, and he is unwilling or unable to provide legible copies thereof, it is impossible to determine whether or not they support such

---

[7] Exhibits 16F and 17F in the Administrative Record are Dr. Tank's July 29, 2010, Mental RFC Questionnaire, and his September 4, 2010, letter, respectively. [See AR at 446-53.]

9

an extreme assessment." [AR at 18; see also AR at 20.] The ALJ therefore concluded that "[Dr. Tank's] opinions lack substantial medical support." [AR at 18.]

Plaintiff contends that the ALJ's duty to recontact Dr. Tank was triggered here because: Dr. Tank's opinions reflect continuity of treatment over a 13-year period; Dr. Tank's mental assessment of plaintiff's abilities is "very complete and thorough"; his September 24, 2008, assessment and his July 29, 2010, assessment are consistent with each other; his opinions are largely consistent with those of a non-examining physician; and it appears that the ALJ himself did not participate in contacting Dr. Tank to attempt to obtain legible treatment records. [JS at 24-25.]

Defendant argues that the ALJ did not fail to develop the record in this case because it is plaintiff's responsibility to furnish medical evidence of disability, and because plaintiff's counsel assumed responsibility for obtaining legible copies of Dr. Tank's treatment notes. [JS at 27-29.] Defendant further contends that to the extent the ALJ had a duty to further develop the record, he satisfied that duty by continuing two hearings to allow plaintiff more time to obtain legible copies of Dr. Tank's treatment notes, and by ordering a psychological consultative examination of plaintiff. [JS at 28.]

Dr. Tank treated plaintiff on a monthly basis for at least 4 years, and for as many as 14 years. As plaintiff's treating psychiatrist, Dr. Tank had a "longitudinal history of treatment with" plaintiff. More weight is generally given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. § 416.927(d)(2). However, in finding that Dr. Tank's opinions "lack[ed] substantial medical support" because his treatment notes were illegible, the ALJ concluded that the evidence received from Dr. Tank was inadequate to determine disability. This triggered the ALJ's duty to contact Dr. Tank under 20 C.F.R. § 416.912(e) (2011), and the Commissioner's contention that the ALJ fulfilled this duty by entrusting that responsibility to plaintiff's counsel is unavailing. See White, 287 F.3d at

908 ("The Commissioner, under the governing regulations, must recontact a treating physician when the information the doctor provides is 'inadequate ... to determine whether ... [the claimant] [is] disabled.' 20 C.F.R. § 416.912(e). The regulations do not burden the claimant with any additional obligation in this regard once the record is deemed 'inadequate.'").[8]

      The Court acknowledges that the ALJ here continued plaintiff's administrative hearing twice to allow plaintiff's counsel to try to obtain supplemental records from Dr. Tank, and also ordered that a psychological consultative examination be performed in the interim. Nevertheless, the ALJ did not -- at either the August 30, 2010, hearing, or the January 19, 2011, hearing -- ask counsel what had been done to try to obtain legible copies or summaries of Dr. Tank's treatment notes. [See AR at 32-33, 63-64.] At the January 19, 2011, hearing, before stating that "we'll proceed to complete the record today," the ALJ merely stated: "I don't see that any progress has been made [in obtaining typed or otherwise legible versions of Dr. Tank's records] so apparently that was not ... possible," and also: "I'll assume since it's not in there that it wasn't possible to obtain that, so certainly more ... than adequate time has been allowed." [AR at 32-33.] Despite the fact that counsel did not provide the ALJ with any information about what had been done, if anything, to try to obtain legible copies of Dr. Tank's records, the ALJ in his decision stated: "At the January 2011 hearing, counsel advised me that, despite diligent efforts, he was unable to obtain a legible transcription of the treatment records." [AR at 14.] Based on this conclusion, the ALJ determined that "reasonable efforts to fully develop the record, including appropriate re-contacting of Dr. Tank to obtain legible transcriptions of his treatment records, ha[ve] been undertaken pursuant to 20 C.F.R. [§] 416.912." [Id.] However, the ALJ did not himself contact Dr. Tank, either to submit questions to him, or to subpoena him to testify before the ALJ. See Tonapetyan, 242 F.3d at 1150. By relying entirely on plaintiff's counsel to obtain legible copies of Dr. Tank's treatment notes, and by failing to inquire specifically into what counsel did to try to obtain such copies, the

---

    [8] The ALJ confirmed the inadequacy of the record when he noted at the supplemental hearing that "to be fair to [plaintiff] [the medical expert] has to be able to [read Dr. Tank's treatment notes] before he forms his final opinion." [AR at 64.] The ALJ ended up relying on the medical expert's opinion [AR at 19] despite not having legible treatment notes from Dr. Tank.

11

1   ALJ failed to discharge his duty to make "every reasonable effort" to recontact Dr. Tank in order
2   to determine the basis for his opinions.[9]  See SSR 96-5p (because treating source evidence is
3   important, when a treating opinion is ambiguous, inconsistent, incomplete, or appears not to be
4   based on objective findings, the ALJ must make "'every reasonable effort'" to recontact the treating
5   medical source for clarification); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)
6   ("An ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the
7   ALJ to make a disability determination.") (citation omitted).  This is especially true where, as here,
8   the ALJ acknowledged that Dr. Tank's opinion (in the legible records) is that plaintiff's mental
9   impairments "are listing level in severity" [AR at 18, 20], i.e., that plaintiff is not able to work.

10  Under these circumstances, the Court cannot find that -- by simply continuing plaintiff's
11  administrative hearings and ordering a consultative examination -- the ALJ properly discharged
12  his duty to develop the record by recontacting Dr. Tank.  Remand is warranted on this issue.  See
13  Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975) ("Where the medical records are crucial
14  to the claimant's claim, illegibility of important evidentiary material has been held to warrant a
15  remand for further clarification and supplementation."); Miller v. Heckler, 756 F.2d 679, 680-81 (8th
16  Cir. 1985) (finding that the ALJ failed to develop evidence from the claimant's treating source
17  where the record contained handwritten entries that were in large part illegible).[10]

18  /
19  /
20  /
21  /
22  /

---

[9]   It is unclear from the record, for instance, whether legible copies of Dr. Tank's treatment notes were not obtained because Dr. Tank was truly unwilling or unable to provide such copies (as the ALJ concluded in his decision [see AR at 18]), or because plaintiff's former counsel did not attempt to obtain such copies or did not adequately communicate what was being sought.

[10]  As the ALJ's duty on remand to obtain legible copies of Dr. Tank's treatment notes may impact on the other issues raised by plaintiff in the Joint Stipulation, the Court exercises its discretion not to address those issues in this Order.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to fully develop the record by recontacting Dr. Tank.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 1, 2012

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE